AO 93 Search and Seizure Warrant

| | ☒ FILED | ____ LODGED |
| --- | --- | --- |
| | ____ RECEIVED | ____ COPY |

# UNITED STATES DISTRICT COURT
for the
District of Arizona

APR - 1 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY **NM** ____ DEPUTY

In the Matter of the Search of
A Blue Samsung S25

Case No. **26-1254MB**

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before ___**4/15/2026**___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for __30__ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: **4/1/2026 at 1:21 pm** _____
Judge's signature

City and state: <u>Yuma, Arizona</u>          <u>Honorable James F. Metcalf, U.S. Magistrate Judge</u>
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a Blue Samsung cellphone (Subject Cellphone). Subject Cellphone is currently located at 4151 S Avenue A, Yuma, AZ 85365.

This warrant authorizes the forensic examination of Subject Cellphone for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### *Property to be seized*

1.      Any records and information found within the digital contents of Subject Cellphone that relate to violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii), including alien smuggling activity, and other communications of other illegal activity from December 27, 2025 to February 27, 2026:

a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

b.  all information related to the smuggling, transportation, transfer, and possession of undocumented non-citizens;

c.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

d.  all bank records, checks, credit card bills, account information, or other financial records;

e.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

f.  any information recording schedule or travel;

g.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

h.  contextual information necessary to understand the above evidence.

2.      Any records and information found within the digital contents of Subject Cellphone showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

| FILED | LODGED |
| --- | --- |
| X RECEIVED | COPY |

# UNITED STATES DISTRICT COURT
for the
District of Arizona

APR - 1 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY **NM**                    DEPUTY

In the Matter of the Search of
A Blue Samsung S25

Case No.  **26-1254 MB**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
| --- | --- |
| 8USC1324(a)(1)(A)(v)(I) | Conspiracy to Transporting/Harboring Illegal Aliens |

The application is based on these facts:

**See attached Affidavit of Border Patrol Agent Juan Garcia**

☒ Continued on the attached sheet.
☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Ross Arellano Edwards

Digitally signed by Ross
Arellano Edwards
Date: 2026.03.27 09:14:29
-07'00'

*Applicant's Signature*

Juan Garcia Border Patrol Agent- Intelligence
*Printed name and title*

Sworn to me telephonically.

Date: __4|1|2026__

*Judge's signature*

City and state: Yuma, Arizona

Honorable James F. Metcalf, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### *Property to be searched*

The property to be searched is a Blue Samsung cellphone (Subject Cellphone). Subject Cellphone is currently located at 4151 S Avenue A, Yuma, AZ 85365.

This warrant authorizes the forensic examination of Subject Cellphone for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

## *Property to be seized*

1.    Any records and information found within the digital contents of Subject Cellphone that relate to violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii), including alien smuggling activity, and other communications of other illegal activity from December 27, 2025 to February 27, 2026:

    a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

    b.  all information related to the smuggling, transportation, transfer, and possession of undocumented non-citizens;

    c.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

    d.  all bank records, checks, credit card bills, account information, or other financial records;

    e.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

    f.  any information recording schedule or travel;

    g.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

    h.  contextual information necessary to understand the above evidence.

2.    Any records and information found within the digital contents of Subject Cellphone showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

2

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Juan Garcia, am a Border Patrol Agent- Intelligence of the United States Border Patrol, being duly sworn, does depose and state the following:

### I.     INTRODUCTION AND AGENT BACKGROUND

1.     Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure, for a search warrant authorizing the examination of a Blue Samsung S25 cellular device (Subject Cellphone), described below and in Attachment A, and the extraction of electronically stored information from that property, as further described in Attachment B. Because this affidavit is being submitted for the limited purpose of securing a warrant to search the property listed in Attachment A, I have set forth only the facts that I believe are necessary to establish probable cause to believe evidence of violations of Title 8 United States Code, Sections 1324(a)(1)(A)(ii) and (iii) (transportation and harboring of aliens) is contained in the property described below and in Attachment A.

2.     I am a Border Agent-Intelligence (BPA-I) with Department of Homeland Security/Office of Border Patrol (DHS/OBP), Yuma Sector Intelligence Unit. I have been a BPA since August 30, 2010, and currently serve as an Intelligence Agent with Yuma Sector Intelligence Unit.

3.     On November 22, 2010, I completed the BPA Basic Training and basic law enforcement training at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am currently assigned to the Sector Intelligence Unit at Yuma, Sector. I am currently a member of the Yuma Sector Intelligence Targeting Unit (TU) in which I've gained much experience in the operations of various illicit smuggling organizations in various regions of the United States. I have been exposed to casework involving both alien and drug smuggling cases, along with the legal guidelines associated with this line of work. I have also gathered and interpreted criminal records, interviewed multiple principals and material witnesses, and properly executed the dissemination of information through the proper channels.

4.     By virtue of my duties as an Intelligence Agent, I have performed various tasks that include, but are not limited to: (a) functioning as a surveillance agent, thus observing and recording movements of persons performing criminal acts, and those suspected of performing criminal acts;

and (b) interviewing witnesses, cooperating sources and sources of information relative to the smuggling of aliens and the distribution of monies and assets derived from the smuggling of aliens (to include the laundering of alien smuggling proceeds)

5.      While conducting alien smuggling investigations, I have personally interviewed persons involved in the smuggling of aliens. I have consulted with other experienced investigators concerning the practices of alien smugglers and the best methods of investigating them. This Affidavit contains facts based both on my personal knowledge.

6.      Through training and experience, Your Affiant knows that alien smugglers commonly use cellular telephones, and other communication devices, to communicate with their associates and to facilitate the transportation and housing of person illegally present in the United States. These communication devices contain electronically stored data, including, but not limited to, contact names and numbers of alien smuggler associates, call details including call and text message history, email messages, text messages, images related to the alien smuggling, their associates and their alien smuggling activities, and ledgers or other records of alien smuggling activities, all of which can be used to identify and locate associates of alien smugglers, identify organizational methods of operation, and corroborate other evidence learned during the course of an investigation.

7.      The statements contained in the Affidavit are in part on information provided from your Affiant's personal knowledge and/or observations and from information as derived from the personal knowledge and/or observations of other sworn law enforcement official, either directly or indirectly through their reports or affidavits, surveillance conducted by law enforcement officials, analysis of public records, and analysis of financial and business documents. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all the relevant facts known to law enforcement officers. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all the relevant facts known to law enforcement officers.

2

## II.    BASIS FOR PROBABLE CAUSE

8.    On February 27, 2026 at approximately 1055 hours (California Time), Border Patrol Agent (BPA) Cortes and BPA Hernandez were monitoring traffic at the agricultural checkpoint on the California Arizona border. BPAs noticed a white Toyota Camry, coming from Arizona into California, switch lanes at the last moment to be as far away from them as possible. BPAs noticed two passengers in the back seats who appeared to be trying to conceal themselves. The driver of the vehicle would not look in their direction and displayed a rigid body posture. BPAs believed this behavior was indictive of possible human smuggling and began following the Toyota Camry traveling westbound on Interstate 10. While following the Toyota Camry, BPAs conducted a records check and learned that the vehicle was a rental out of Calexico, California. It is a common tactic for smugglers to use rental vehicles and travel from Calexico, deep into Arizona, then on towards Los Angeles to avoid detection.

9.    At approximately 1100 hours, BPA Cortes activated her emergency lights and siren to conduct a vehicle stop on the white 2025 Toyota Camry, four-door sedan. The vehicle yielded and pulled over onto the right shoulder at milepost 149 on Interstate 10 westbound, near Blythe, California.

10.    BPA Cortes and BPA Hernandez approached the vehicle and identified themselves as United States Border Patrol Agents conducting an immigration inspection. The driver appeared nervous and was visibly tearing up. BPA Cortes asked the driver, later identified as Christian Torres-Delgado (Torres), to step out of the vehicle for officer safety. Torres complied and exited the vehicle.

11.    During a roadside interview, Torres stated he did not know the passengers, later identified as Huyen Thi Tran (Tran), and Jose Antonio Vargas-Gomez (Gomez). TORRES further stated he was aware that both passengers were illegally present in the United States without proper immigration documents. He stated someone dropped off both passengers at a predetermined location in Calexico, California, and he was taking them to Los Angeles, California for drop off. At approximately 1120 hours, Torres was detained, advised of his *Miranda* rights, and placed in the rear seat of a marked Border Patrol vehicle pending further investigation.

3

12. Record checks conducted through DHS databases confirmed that Tran and Gomez were illegally present in the United States, having not been admitted or paroled, and lacking proper documentation authorizing them to enter or remain in the United States legally.

13. Based on the totality of the circumstances including Torres admission of knowledge of the passengers' illegal status and his act of transporting them within the United States in furtherance of their illegal entry, Torres was placed under arrest for violation of Title 8, United States Code section 1324. Torres and the passengers were transported to the Blythe Border Patrol Station in Blythe, California, for further processing.

14. All the subjects were later transported to the Yuma Station for processing of: (8 USC 1324) bringing in or harboring certain aliens. Torres' Blue Samsung S25 was seized from his person for being used for violations against 8 USC 1324.

15. The Subject Cellphone is currently in the lawful possession of United States Border Patrol (USBP). The Subject Cellphone was seized during the incident to arrest. Therefore, I seek this warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

16. The Subject Cellphone is currently in storage at the Yuma Border Patrol Station at 4151 S Avenue A, Yuma, AZ 85365. In my training and experience, I know that the Subject Cellphone has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Subject Cellphone first came into the possession of the United States Border Patrol.

III. **ITEMS TO BE SEIZED**

17. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of Subject Cellphone.

18. Based upon my knowledge, experience, and training in Transnational Criminal Organization (TCO) investigations, as well as the training and experience of other law enforcement officers with whom I have had discussions, I know that individuals involved in alien smuggling activity tend to:

4

a) Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted, including names and nationalities of smuggled aliens, as well as monies owed and/or paid for alien smuggling;

b) Collect data pertaining to other co-conspirators involved in alien smuggling activity;

c) Possess and maintain records reflecting bank transactions and/or money transfers relating to alien smuggling activity;

d) Maintain collections of records that are in digital or electronic format in a safe, secure, and private environment, including electronic communication devices (such as the Target Phones). These records are often maintained for several years in close proximity to the alien smuggler, usually at the individual's residence, to enable the alien smuggler to review the records, which are highly valued;

e) Correspond with and/or meet with other alien smuggling associates to share alien smuggling information and/or materials;

f) Retain correspondence from other alien smuggling co-conspirators relating to alien smuggling activity;

g) Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the alien smugglers have been in contact and/or conducted alien smuggling activity.

19.     Based on my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation and with whom I have conferred, I know that TCO utilize cellular telephones (such as the Subject Cellphone) to facilitate alien smuggling activity, and to communicate when conducting their illegal activity, utilizing the voice, text, and electronic mail (if accessible) functions of cellular telephones to do so. Individuals involved in alien smuggling activity use these devices to coordinate the transport and housing of aliens, facilitate the collection and movement of currency, and communicate with members of the TCO about the specific operations of that TCO. These cellular telephones usually contain electronically stored data on or within the cellular telephones, including contact names and numbers of alien smuggling associates; call details, including call history, electronic mail (email) messages, text messages and/or text message history; and digital images of alien smuggling associates and/or activity. All this information can be used to identify and locate alien smuggling

5

associates, identify methods of operation of the TCO, and corroborate other evidence obtained during the course of an investigation.

20.    In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the Subject Cellphone.

## IV.    DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

21.    As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the Subject Cellphone. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

22.    *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the Subject Cellphone for at least the following reasons:

a.    Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.    Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and

6

other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c.    Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

23.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the Subject Cellphone because:

a.    Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.    As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications,

7

images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating, or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.      A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be

8

sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e.  Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

  24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the Subject Cellphone, including the use of computer-assisted scans.

  25. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

//

//

//

//

//

//

9

## V.    CONCLUSION

26.    Your Affiant submits there is probable cause to believe probable cause to believe that the property listed in Attachment A (Subject Cellphone) contains evidence related to the transportation and harboring of aliens, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii). For this reason, I respectfully request that this Court issue a search warrant authorizing a search of the Subject Cellphone listed in Attachment A to seize the items of evidence listed in Attachment B.

Border Patrol Agent-Intelligence Juan Garcia

United States Border Patrol

Sworn to me telephonically ___1st___ day of April, 2024.

HONORABLE JAMES F. METCALF

United States Magistrate Judge

10